UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
KERWIN VASQUEZ,                                               :
                                                              :
                                    Plaintiff,                :
                                                              :      12 Civ. 7390 (JPO)
              -v-                                             :
                                                              :      OPINION AND ORDER
                                                              :
METRO-NORTH COMMUTER RAILROAD,                                :
                                                              :
                                    Defendant.                :
------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

     Plaintiff Kerwin Vasquez injured his left wrist on October 19, 2009 while working as an electrician for his employer, Metro-North Commuter Railroad ("Metro-North").  He returned to work the next day, but later discovered that his injury had worsened.  Vasquez brings claims against Metro-North under the Federal Employers Liability Act, 45 U.S.C. § 51 ("FELA"), for (1) failure to provide a safe workplace, leading to the injury, and (2) negligently directing Vasquez to immediately return to full-duty work, aggravating the injury.  Metro-North seeks summary judgment dismissing the second claim only.  For the reasons that follow, that motion is denied.

I.     **Applicable Legal Standards**

    A.    **Summary Judgment**

     In general, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557

1

U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden on a party moving for summary judgment is to provide evidence of each element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant makes this showing, the burden shifts to the non-moving party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(f); *Anderson*, 447 U.S. at 250-51. The court should view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). At the same time, the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587).

### B. FELA

In FELA cases, the standard for summary judgment is "liberally construed" in light of the "strong federal policy in favor of letting juries decide cases arising under FELA." *DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R.*, 237 F. App'x 642, 644 (2d Cir. 2007) (internal quotations omitted). It is well established in this Circuit that "[a] FELA case 'must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'" *Id.* at 644-45 (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994)). Additionally, "there is a considerably more relaxed standard of proof for determining negligence in FELA cases": plaintiffs need only "offer some evidence that

would support a finding of negligence." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76-77 (2d Cir. 1993) (quotation marks and citation omitted).

"In FELA actions, the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). As recently summarized by the Second Circuit, the emphasis is on reasonable foreseeability:

> For an employer to be found negligent, the plaintiff must show reasonable foreseeability. This turns on whether the employer knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to . . . protect its employees.

*DeRienzo*, 237 F. App'x at 645 (quotation marks and citations omitted). "Elements that a trier of fact may consider in determining whether a risk is unreasonable . . . are (1) the likelihood that harm will eventuate and (2) the cost of preventing that harm . . . ." *Murphy v. Metropolitan Transp. Auth.*, 548 F. Supp. 2d 29, 37 (S.D.N.Y. 2008).

Additionally, FELA relaxes the causation standard and provides that "a defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played *any part* in bringing about the injury." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2634 (2011) (emphasis added). Under FELA, "a tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act." *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 121 (1963).

**II.    Facts**

Unless otherwise stated, these facts are taken from the parties' Rule 56.1 Statements, and are undisputed. Given the applicable legal standard, the Court summarizes the facts in the light most favorable to Plaintiff, the non-movant.

On October 19, 2009, a galvanized steel conduit pipe fell on Vasquez's left wrist while he was working as an electrician in New York City's Grand Central Terminal. Emergency medical technicians (EMTs) examined Vasquez, and he was taken to Bellevue Hospital ("Bellevue") for an examination. Vasquez was diagnosed with a wrist sprain or contusion and discharged on the same day. At that time, Vasquez was told that he could return to work, and was instructed to seek follow-up care if symptoms persisted or if he had any other concerns.

On October 20, 2009, the day after the accident, Vasquez returned to work and was placed on full duty. The same day, a Bellevue doctor faxed a form to Metro-North advising the company to "please excuse [Vasquez] from work" (the "Excuse Form"). (Dkt. No. 21, "Pl.'s 56.1 Stmt." at 2 (citing Ex. I, "Excuse Form").)[1] Vasquez was not shown this form. Metro-North argues that the excuse "form was meant for Plaintiff's absence on October 19, 2009 only." (Dkt. No. 23, "Def.'s 56.1 Reply Stmt." at 5.) However, Vasquez argues that because the form did not specify the amount of time that he should remain out of work, Metro-North should have inquired with Bellevue or referred Vasquez to Metro-North's Occupational Health Services unit ("OHS") for an evaluation upon returning to work. (Pl.'s 56.1 Stmt. at 9.)

OHS is tasked with "ensur[ing] that an injured employee's recovery, rehabilitation and return to duty are properly managed." (Dkt. No. 18, "Def.'s 56.1 Stmt." at 2-3.) OHS "reviews outside medical providers' reports and determines when an employee can return to work and in which capacity, but does not provide medical treatment. (*Id.* at 3) Injured employees are required to report to OHS if they are "treated at an outside medical facility and . . . found not qualified for full duty," but not if they are qualified for full duty by the outside facility. (Pl.'s

---

[1] All exhibits referenced in this Order are attached at docket number 17.

56.1 Stmt. at 4.)  Because the parties disagree about whether Bellevue qualified Vasquez to return for full duty, they also disagree about whether Vasquez should have been required to report to OHS upon his return to work.  Under Metro-North's policy, after returning to work, injured employees are obligated to inform their supervisors of any ongoing effects of a work injury, and should be referred to OHS for an evaluation if they have complaints.  Further details regarding the implementation OHS policy are disputed.[2]

The parties disagree about when Vasquez first complained about wrist pain following his return to work.  *Compare* (Def.'s 56.1 Stmt. at 3 ("There is no evidence that Plaintiff made any complaints of pain or of any physical limitations as a result of his alleged injury . . . [from] October 20, 2009 through February 2010.")) *with* (Pl.'s 56.1 Stmt. at 3 ("After October 19, 2009, Plaintiff repeatedly complained to his supervisors about the effect of his left wrist condition on his ability to perform his job.") (citing Exh. E, "Vasquez Deposition," at 57-58.)).  In a regularly scheduled physical, held on January 26, 2010, Vasquez did not report wrist pain.  However, the parties agree that in February 2010, Vasquez did complain of wrist pain.

Following his complaint in February 2010, Vasquez was treated by Dr. Ignatius Rodger, his personal orthopedist, who performed an X-Ray and CT scan.[3]  Rodger found that Vasquez

---

[2] For example, Plaintiff points to deposition testimony from a Metro-North supervisor who said that "anytime an individual is injured, that the first day back to work, they return to work, they must report to OHS with their medical records to be evaluated." (Pl.'s 56.1 Stmt. at 9 (quoting Ex. 1, Stroh Deposition, at 39-41).)  However, Defendant relies on Metro-North's manual to argue that when an employee is found fit for duty by an outside facility, OHS evaluation is not necessary; rather, it becomes the employee's duty "to report to OHS if he feels . . . unable to report to full duty."  (Def.'s 56.1 Reply Stmt. at 4.)

[3] Plaintiff maintains that even after his February 2010 complaints, he was "not referred to OHS and did not request any authorization from OHS prior to seeing his treating orthopedist Dr. Rodger." (Pl.'s 56.1 Stmt. at 7.)  Plaintiff was evaluated by OHS regarding his left wrist injury on February 24, 2010.  (Def.'s 56.1 Reply Stmt. at 7.)

5

suffered from a left wrist scaphoid fracture and immediately placed Vasquez's wrist into a cast. Rodger reviewed the Bellevue X-Rays from October 19, 2009 and determined that Vasquez "had a fracture that day" and, by February 2010, had "the same exact fracture . . . only bigger." (Vasquez Deposition at 53.)  Plaintiff represents that OHS also sent the two sets of X-Rays from October 2009 and February 2010 to a radiologist who reported that he could not "exclude a relationship [between an] injury four and a half months prior, with this partially healed or non-united scaphoid fracture." (Pl.'s 56.1 Stmt. at 4).  Defendant disagrees with this interpretation of the radiologist's report.  After Vasquez sought treatment with Dr. Rodger, OHS placed Vasquez on restricted duty with no use of his left hand.  (Pl.'s 56.1 Stmt. at 10-11).

**III.   Discussion**

A factual dispute exists about whether Vasquez complained to supervisors about experiencing pain from his injury.  This dispute goes to the critical issue of foreseeability.  If Vasquez complained frequently about wrist pain after returning to work from his injury, then the risk that his injury would be aggravated by continuing to work on full duty would be foreseeable. The same risk would be less foreseeable if Vasquez did not complain of pain in the months from October 2009 through February 2010.  The issue of foreseeability is a question of fact for the jury.  *In re September 11 Litig.*, 280 F. Supp. 2d 279, 295 (S.D.N.Y. 2003). ("foreseeability is generally for the fact finder to resolve").

Plaintiff specifically alleges that "[d]uring the four months following [the] October 19th injury, [Vasquez] repeatedly complained to his supervisors about his inability to perform all his work tasks due to his injured left wrist." (Pl.'s 56.1 Stmt. at 10.)  In his deposition, Vasquez stated that:

> [M]y foreman and my supervisor . . . knew I was in pain.  The pain just got worse as I used it.  It got worse, but my own supervisor had offered me Ben-Gay and stuff . . . . They knew I had pain. . . . I would cry to them all the time.  I'm having

6

>problems holding up this drill.  I'm having problems with this.  I don't know what's going on.  This is bad.

(*Id.* (citing Vasquez Deposition at 57-58).)  Defendant concedes that "*[o]ther than plaintiff's own testimony*, no evidence exists that [Vasquez] requested an evaluation by OHS or told his supervisor that he was in pain from the date of the incident . . . through February 2010."  (Def.'s 56.1 Reply Stmt. at 5 (emphasis added).)  Defendant calls Vasquez's credibility into doubt because social media websites contained images of him weightlifting and using his wrists to support himself during the period when he claims to have experienced wrist pain.  (Def.'s Rule 56.1 Stmt. at 5.)  However, Vasquez responds that while he was in pain during that period, he was still able to engage in the acts portrayed in those images, just as he was able to engage in his work duties, but only with difficulty.  (Pl.'s Rule 56.1 Stmt. at 7.)  Ultimately, Vasquez's testimony is not so incredible that it should be taken away from the jury.  *Gunning v. Cooley*, 281 U.S. 90, 94 (1930) ("Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury."); *United States v. Daley*, 564 F.2d 645, 650 (2d Cir. 1977) ("[C]redibility [i]s a matter for the jury to determine.").

The issue of foreseeability goes to the heart of this case and informs the scope of Metro-North's duty to Vasquez.  While "[t]he existence . . . of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court," *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583 (1997), "[t]he scope of duty . . . depends on the [defendant's] relationship to . . . plaintiffs, whether plaintiffs were within a zone of foreseeable harm, and whether the harm was within the class of reasonably foreseeable hazards that the duty exists to prevent."  *In re September 11 Litig.*, 280 F. Supp. 2d at 295.  Under FELA, railroad defendants have "a nondelegable duty to provide a safe place to work for [their] employees."  *Wanser v. Long Island R.R.*, 238 F.2d 467, 470 (2d Cir. 1956), *cert denied sub nom. Long Island R.R. v. Cent. Islip Coop. G. L. F. Serv.,*

*Inc.*, 353 U.S. 911 (1957). Metro-North's policy of sending employees to OHS when they complain of pain suggests that Vasquez would have been "within a zone of foreseeable harm" if he had complained of pain to a supervisor. Ultimately, the scope of Metro-North's duty to Vasquez depends in part on the foreseeability of the risk that full duty work would aggravate his injury. In other words, the scope of the duty depends on the credibility of Vasquez's testimony that he complained about his injuries to his supervisors prior to February 2010.

The factual dispute about Vasquez's complaints is sufficient on its own to deny summary judgment. However, this outcome is bolstered by additional factual disputes regarding (1) whether Vasquez was excused from work for the day of the accident only or for an indeterminate period of time following the accident; (2) whether the Bellevue records provide a sufficient basis for Metro-North's decision to place Vasquez on full duty work without OHS follow-up; (3) the details of Metro-North's policies toward after-care as they were implemented in practice; and, (4) whether medical experts have established a causal connection between Vasquez's accident, his work, and his aggravated wrist injury in February 2010. Thus, Vasquez's second claim for negligence cannot be resolved on summary judgment.

**IV.   Conclusion**

For the foregoing reasons, Metro-North's motion for summary judgment is denied. The Clerk of the Court is directed to close the motion at docket number 16.

Counsel for the parties shall appear for a conference to address scheduling of the trial. The conference will be held at 10:00 a.m. on Wednesday, April 23, 2014 in Courtroom 706 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

SO ORDERED.

Dated: April 4, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

8